Harper J.
delivered the opinion of the Court.
In support of the first ground in arrest of judgment, the reasoning of the prisoner’s counsel has been to this effect. That the act of Congress establishing the bank of the United States, provides for punishing the counterfeiting, or the uttering and publishing as true, of any counterfeit note, bill, order or check of that institution, by fine and imprisonment. That it has been decided that the general Government had constitutional power to establish the bank, and it was necessarily incident to that power, that it should be able to protect its paper from forgery. That at least, the Court would be unwilling to question the power of the Government in a case like the present; and having legislated on the subject, its legislation must be exclusive. That the Federal Government possesses exclusive power in three instances. 1st. Where the power is granted exclusively in terms ; 2d. Where it is granted to the Government, and prohibited to the States ; and 3d. Where the power is granted, and having been exercised by *46 legislation bn the subject, the exercise of similar power by the ®tates W0UM be repugnant and incompatible. That to the last class belongs the power in question: And the act of Congress having fixed the punishment of counterfeiting bank notes, or uttering them as true, it is repugnant and incompatible that a different punishment should be prescribed- by the act of the State. Will you say that the punishment shall be accumulative, and that the party may be tried first in one Court, and then in the other, in violation of the privilege of a citizen not to be twice put in jeopardy for the same offence, or shall a conviction under one jurisdiction be a bar to trial in the other 1 Many aSsifi'cTand inconvenient consequences would follow this view of the subject. Then a pardon by the Governor before trial, must be a bar to a prosecution in the Federal Court, or a pardon of the president in the State Court. That it is true, the act saves the jurisdiction of the State Courts over such offences ; but if the legislation of Congress has covered the whole ground, and thus beco'me exclusive, it had no right to delegate such jurisdiction. The case of Houston v. Moore, 5 Wheat. 1. was principally relied-on in support of these views.
The constitution expressly grants to Congress the power to punish the offence of counterfeiting the securities and current coin of the United States. Yet, in the case of the State v. Antonio, 2 Treadw. 776, which was a prosecution for uttering and publishing forged coin, the Constitutional Court held that its jurisdiction was not ousted. The Court intimates its impression, (the grant to Congress being of the power to punish counterfeiting) that if the jurisdiction to punish the uttering and publishing, were exclusive in either the Federal or State tribunals, it appertained rather to the latter. This seems not to be without reason. The offence against the Government of the United States consists in discrediting its currency. That against the Stale in defrauding its citizens. The offence against the State is certainly of the more palpable and dangerous; character. •_ The frafmers of the Constitution may have supposed that tile power of punishing the actual forgery, was a sufficient security to the general Government, while to the States, it belonged to protect their citizens from the consequences of passing and circulating spurious_coin. If this reasoning has any weight with respect to the uttering of forged coin, it would seem entitled to still more, *47 with respect to forged bank notes. The power to establish a bank, is an implied one, as being necessary and proper to carry the granted powers into effect, and from this implied power is implied the further power to protect the paper of the bank by punishing the circulating of spurious paper. The necessity of this implication may perhaps be doubted. The injury to the bank, of circulating forged paper is, that its genuine paper may be discredited, and its circulation impeded. But this cannot take place to a great extent, and is trifling, compared with the injury a State may sustain, if it be deprived of the power of protecting its citizens from being inundated by a spurious currency; injuring their property, depraving their morals and embarrassing their intercourse.
„ State». Sonif. erkaib. 2 N. &■ v. Fife, 1 Bailey, 1. Stats' p'a*^j01,*)0st'
jngel.soip„ Abr. -499.
Suppose, that instead of the fine and imprisonment imposed by the act, Congress had thought a trifling fine of a few dollars sufficient for the protection of the bank, must the State abandon all power of protecting its citizens ? The argument, from necessity, seems much stronger in favour of the power of the States. On this question, however, I do not think it necessary to give a definitive opinion.
The grant of a power to Congress which is not prohibited to the States, is likely to be the source of many difficult questions in our jurisprudence. ■ Among these will probably be, whether the same act of an individual may not constitute a distinct and „ . , J , . . ,, separate oirence against each Government, and be punishable by each. We have held in some instances, that the same act J ’ may constitute two distinct offences against our own Government, The question whether, if both Governments provided for the punishment of the same offence, the law of the State shall be null, and superseded by the law of the general Government, seems to be decided by the case of Houston v, Moore. But there is this distinction between that case and the present. In that, the act punished by the law of the State, was certaiñly and exclusively an offence against the general Government; a refusal by a militiaman to obey the orders of the president, which the State undertook to punish. Here, certainly there is an offence against the State, and a very different one from that committed against the United States. These difficulties, however, do not arise in the case before us, as the jurisdiction of the States is expressly saved by the act of Congress in question. The law of Congress *48 for punishing the counterfeiting of coin, enacts that it shall not be construed to deprive the Courts of the individual States, of jurisdiction under the laws of the State, over offences made punishable by the act. Jutice Story in the case of Houston a. Moore, recognizes the jurisdiction of the States under this saving. lie refers to the practice of the several States, particularly of Pennsylvania. The cases of White v. Commonwealth, 4 Binn. 408, and Livingston v. Van Ingen, 9 Johns. 507, are referred to in a note. I believe that most of the States have similar eases, and in none of them has their authority been called in' question. The saving under the law establishing the bank, is in a different form, and renders the question less disputable. It is in the form of a proviso : “ provided that nothing herein contained shall be construed to deprive the Courts of the individual States of a jurisdiction under the laws of the several States, over any offence declared punishable by this act.” Congress makes it a condition of its legislation, that it shall not interfere with the jurisdiction of the States. It is certainly true, that the general Government eonnot confer a jurisdiction on the States where it was not possessed before. But in the case we are considering, there was unquestionably a jurisdiction in the first instance. The State is supposed to have lost it, because Congress having a concurrent jurisdiction, and having exercised it, its laws being supreme, have come in collision with the law of the State. But Congress itself has declared that its law shall not come into collision with the law of the State; but if there be any repugnancy or incompatibility, the law of the Slate shall have effect. It seems to me, therefore, that if either law be inoperative within this State, it is clearly the law of Congress ; and that by virtue of its own provisions.
Ingersoll’s Abr. 57.
The second and third grounds in arrest of judgment, and the first ground for a new trial may be considered together. The forged bill in question purported to be payable to A. G. Rose, or order, and to be indorsed by him. If there had been no indorsement the offence would certainly have been complete, as the bona fide holder of such a genuine bill, not indorsed, would be authorised to receive payment, or bring an action on it in the name of the payee. By passing such a bill, the fraud is effected within the terms of the act. But it is contended, that the bill offered in evidence did not correspond with that set forth in the indict *49 ment. The indictment sets forth the face of the bill verbatim et literatim. The indorsement seems rather incidental to, than a part of the bill. It would not have altered the prisoner’s offence if it had been struck out. Besides, the act of the legislature makes the uttering of a forged indorsement a distinct and substantive felony. This is charged in a separate count of the indictment, and is, of itself, sufficient to sustain the verdict of the jury. It can hardly alter the character of the offence of ing a forged indorsement, that it was made on a forged bill.
147, Act 2 Fe
D. L. Wardi,aw, for the motion.
Thompson, solicitor, contra.
The second ground for a new trial has been considered during the present sitting of the Court, in the case of Hooper, and I concur in the opinion delivered in that case.
The third ground was not urged at the hearing. The evidence seems to have been very sufficient to warrant the finding. The several motions in arrest of judgment and for a new trial, are therefore refused.